IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

WILLARD TODD HENSLEY,

    Plaintiff,

        v.

HON. GARY LANGFORD
Sheriff, Murray County, GA,
Individually and in his Official
Capacity, et al.,

    Defendants.

CIVIL ACTION FILE
NO. 4:19-CV-267-TWT

## OPINION AND ORDER

This is a civil rights action. It is before the Court on the Defendants Gary Langford, Brandon Amos, Jeffrey Newport, and LaDon West's Motion for Summary Judgment [Doc. 79] and the Plaintiff Willard Hensley's Motion to Strike [Doc. 82]. For the reasons set forth below, the Defendants' Motion for Summary Judgment [Doc. 79] is GRANTED and the Plaintiff's Motion to Strike [Doc. 82] is DENIED.

## I.    Background[1]

---

[1] The operative facts on the Motion for Summary Judgment are taken from the Defendants' Statement of Undisputed Material Facts. The Court will not consider the Plaintiff's Statement of Material Facts in Opposition because it does not comply with Local Rule 56.1(B)(2)(a). The Defendants' Statement of Undisputed Material Facts is therefore deemed admitted under Local Rule 56.1(B)(2)(a)(2). As to the Plaintiff's Additional Statements of Undisputed Material Facts, the Court will deem the factual assertions, where supported by evidentiary citations, admitted unless the Defendants make a proper objection under Local Rule 56.1(B).

This action arose from the Plaintiff's arrest in Murray County, Georgia on October 26, 2017. (Defs.' Statement of Undisputed Material Facts ¶ 1, 13-41). As relevant to the claims before the Court, Murray County Sheriff Deputy LaDon West, a Defendant in this action, responded to a call from a resident who reported that the Plaintiff was parked in his driveway and would not leave. (*Id.* ¶¶ 1-4, 7). As Deputy West approached the Plaintiff's vehicle in his police cruiser, the Plaintiff drove away and accelerated after Deputy West turned on his blue lights. (*Id.* ¶¶ 9-10). The Plaintiff then turned onto a dirt driveway, drove quickly to a trailer a few hundred feet from the road, struck a parked truck, and stopped. (*Id.* ¶¶ 11-12). Deputy West parked his vehicle, exited with his gun drawn, and repeatedly yelled for the Plaintiff to exit his vehicle, but the Plaintiff refused to do so. (*Id.* ¶¶ 13-14). The Plaintiff shouted at Deputy West and made obscene gestures. (*Id.* ¶ 14).

Soon thereafter, Defendants Sergeant Brandon Amos and Corporal Jeffrey Newport arrived, and Sergeant Amos went to the driver's side of the Plaintiff's vehicle with his Taser drawn. (*Id.* ¶ 18). The Plaintiff tried to reverse his vehicle, and the officers continued to give the Plaintiff verbal commands, but he did not comply. (*Id.* ¶¶ 19-20). Corporal Newport went to the passenger side of the Plaintiff's vehicle and drew his gun before banging on the window and opening the passenger side door. (*Id.* ¶ 21-22). Sergeant Amos fired his Taser through the driver's side window of the Plaintiff's vehicle for five

seconds, causing the Plaintiff to fall into the vehicle's passenger side floorboard. (*Id.* ¶¶ 23-24). The officers continued to command the Plaintiff to show his hands, and he resisted the officers' attempts to grab his hands. (*Id.* ¶¶ 26, 28). Due to the Plaintiff's resistance, Deputy Amos tased the Plaintiff two more times, once for one second and once for two seconds. (*Id.* ¶ 29).

Defendant David Webb, a Pickens County Sheriff's Deputy who lived nearby and was off-duty at the time helped remove Plaintiff's legs from the vehicle before Deputies West and Newport were able to fully remove him and put him on the ground. (*Id.* ¶¶ 30, 32). The Plaintiff continued to resist, and the officers were unable to handcuff him, prompting Deputy Amos to tase him in "drive stun mode" on his back. (*Id.* ¶ 34). The officers were then able to handcuff him and place him into a police vehicle. (*Id.* ¶¶ 36-38). Once the Plaintiff arrived at the jail, he told a nurse that he under the influence of "angel dust." (*Id.* ¶ 41). His injuries included scrapes, bruising, and "knots" on his head, all of which were treated with over-the-counter medication and healed without further medical treatment. (*Id.* ¶¶ 42, 44-45). As a result of these events, the Plaintiff was convicted in state court of obstruction of justice as to Deputies Amos, West, and Newport, and for fleeing to elude as to Deputy West. (*Id.* ¶¶ 49-51; Doc. 74-2 at 37-38). Based on the record before the Court, these convictions have not been overturned or vacated. (*Id.*).

3

Defendant Sheriff Gary Langford had no personal involvement in the Plaintiff's arrest but was responsible for adopting policies regarding the use of Taser devices and use of force more generally. (Defs.' Statement of Undisputed Material Facts ¶¶ 54-55). Deputies Amos, Newport, and West were certified peace officers through the Georgia Peace Officer Standards and Training Council ("POST"), and Sergeant Amos was trained and certified on Taser use. (*Id.* ¶¶ 55-56).

Officers Brandon and Levi Amos, Randy Barnett, and Dennis Biggerstaff, Nurse Carolyn Jenkins, and Sheriff Langford jointly moved for judgment on the pleadings as to the Plaintiff's claims arising out of his post-arrest treatment at the Murray County Jail and his claims against Sheriff Langford in his official capacity, which this Court granted. (Mot. for J. on the Pleadings; Docs. 67, 72). As a result, Defendants Barnett, Jenkins, Biggerstaff, and Levi Amos were dismissed from this action. As best the Court can tell, the Plaintiff's remaining claims are as follows: (1) excessive force under 42 U.S.C. § 1983, against Defendants West, Newport, and Brandon Amos; (2) failure to intervene under § 1983, also against Defendants West, Newport, and Brandon Amos; (3) failure to train against Defendant Sheriff Langford; (4) intentional infliction of emotional distress against all of the Defendants; and (5) respondeat superior against Defendant Langford.

4

## II.  Legal Standards

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), (c). The court should view the evidence and draw any inferences in the light most favorable to the nonmovant. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

The Supreme Court has held that a § 1983 action may not lie where a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence. *Heck v. Humphrey*, 512 U.S. 477, 487 (1994); *Dixon v. Hodges*, 887 F.3d 1235, 1238 (11th Cir. 2018) ("*Heck* bars a § 1983 suit only when it is a logical necessity that judgment for the plaintiff in that suit would contradict the existing punishment." (quotation marks omitted)).

"Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates clearly established statutory or constitutional rights of which

5

a reasonable person would have known." *Gates v. Khokhar*, 884 F.3d 1290, 1296 (11th Cir. 2018) (quotation marks omitted). "A defendant who asserts qualified immunity has the initial burden of showing he was acting within the scope of his discretionary authority when he took the allegedly unconstitutional action." *Id.* at 1297. Once that is shown (and it is not challenged here), "the burden shifts to the plaintiff to establish that qualified immunity is not appropriate by showing that (1) the facts alleged make out a violation of a constitutional right and (2) the constitutional right at issue was clearly established at the time of the alleged misconduct." *Id.* The Court has discretion to decide these issues in either order depending on the circumstances, but the Plaintiff must demonstrate both prongs to survive a qualified-immunity defense. *See Gaines v. Wardynski*, 871 F.3d 1203, 1208 (11th Cir. 2017). And for a constitutional right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (quotation marks and citation omitted).

The Georgia Constitution provides state officials with official immunity for their discretionary actions unless they acted "with actual malice or with actual intent to cause injury in the performance of their official functions." Ga. Const. art. I, § 2, ¶ IX(d). The actual malice standard is a demanding one that "requires an officer to act with a deliberate intention to do a wrongful act[;]"

unreasonable or even recklessly illegal conduct does not support such an inference. *Black v. Wigington*, 811 F.3d 1259, 1266 (11th Cir. 2016). Georgia law gives officers the authority to use "such reasonable nondeadly force as may be necessary to apprehend and arrest a suspected felon or misdemeanant." O.C.G.A. § 17-4-20(b).

In general, supervisory officials cannot be liable under §1983 for the unconstitutional acts of their subordinates via respondeat superior or vicarious liability. *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999). Instead, supervisor liability must be established by a showing that "there is a causal connection between actions of the supervising official and the alleged constitutional deprivation [such as] . . . a history of widespread abuse [that] puts the responsible supervisor on notice of the need to correct the alleged deprivation. *Id.*

"When evaluating an excessive force claim, courts analyze the particular facts of each case to determine whether the force used was justified under the totality of the circumstances." *German v. Sosa*, 399 F. App'x 554, 556 (11th Cir. 2010) (quotation marks omitted). This "objective reasonableness" standard takes into consideration "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 557 (quotation marks omitted). The inquiry also acknowledges that police

7

officers "are often forced to make split-second judgments about the need for such force in circumstances that are tense, uncertain, and rapidly evolving." *Piazza v. Jefferson Cnty., Ala.*, 923 F.3d 947, 953 (11th Cir. 2019). Moreover, a police officer "can be liable for failing to intervene when another officer uses excessive force." *Priester v. City of Riviera Beach, Fla.*, 208 F.3d 919, 924 (11th Cir. 2000).

### III.    Discussion

The Defendants move for summary judgment on all remaining claims, and the Plaintiff has moved to strike the Defendants' summary judgment motion as untimely. The Court will address the Plaintiff's Motion to Strike before turning to the Defendants' Motion for Summary Judgment. For the reasons set forth below, the Court finds that the Plaintiff's Motion to Strike should be denied and that the Defendants are entitled to summary judgment on all of the Plaintiff's claims.

### A. Motion to Strike

The sole argument the Plaintiff raises in his Motion to Strike is that the Defendants' Motion for Summary Judgment was not timely filed. (Pls. Mot. to Strike ¶¶ 6-9). However, the Court previously granted the Defendants an extension of time to file their Motion for Summary Judgment and deemed it timely filed as of March 4, 2022. [Doc. 87]. Therefore, the Plaintiff's Motion to Strike [Doc. 82] should be denied as moot.

## B. Motion for Summary Judgment

The Court next turns to the Defendants' Motion for Summary Judgment [Doc. 79]. The Court will first address the applicability of *Heck v. Humphrey*, and immunity to the Plaintiff's claims for excessive force, failure to intervene, intentional infliction of emotional distress, and supervisor liability.

### i. *Heck v. Humphrey* Bars the Plaintiff's Excessive Force Claim

The Plaintiff was convicted in state court of obstruction of a law enforcement officer based on the same events underlying his claims before this Court. Under Georgia law, that offense requires proof that, as relevant, the officer was "in the lawful discharge of his or her official duties." O.C.G.A. § 16-10-24(b). Of course, use of excessive force violates one's Fourth Amendment rights, such that a police officer necessarily cannot use excessive force "in the lawful discharge of his or her official duties." *See id.* Thus, any determination by this Court that excessive force was used in the course of the Plaintiff's arrest would undermine his obstruction conviction, making his excessive force claim an impermissible collateral attack on that conviction. *See Heck*, 512 U.S. at 487; *Dixon*, 887 F.3d at 1238. Accordingly, Defendants West, Newport, and Brandon Amos are entitled to summary judgment on this ground as to the Plaintiff's excessive force claim.

### ii. The Defendants are Entitled to Qualified Immunity as to the Plaintiff's Federal Claims

Each of the Defendants are entitled to qualified immunity as to the Plaintiff's federal claims against them, which are the claims for excessive force, failure to intervene, and also for failure to train as to Defendant Langford. As an initial matter, the Plaintiff has not challenged the Defendants' assertions that they were acting within the scope of their discretionary authority throughout the Plaintiff's arrest. *See Gates*, 884 F.3d at 1297. Thus, the burden shifts to the Plaintiff to demonstrate that the facts alleged make out a violation of a clearly established constitutional right. *See id.*

#### a. Excessive Force

First, as to his excessive force claim, the Plaintiff essentially alleges that the Defendants violated his Fourth Amendment rights by using excessive force in arresting him. More specifically, he alleges that he had not committed any crime before he was initially tased by Defendant Brandon Amos. (Compl. ¶¶ 45-48). He also alleges that he was "violently drag[ged]" from his vehicle, tased several more times, and slammed "onto the rough, gravel driveway, face first." (*Id.* ¶¶ 49-53). These events ensued, the Plaintiff contends, "merely [because he was] exercising his Constitutional right of passive resistance." (*Id.* ¶ 11). But the evidence before the Court, even construed in the light most favorable to the Plaintiff, does not establish a violation of a clearly established constitutional right. *See Adickes*, 398 U.S. at 158-59; *Gates*, 884 F.3d at 1296.

10

Rather, the evidence shows that, as Defendant West approached the Plaintiff's parked vehicle, the Plaintiff sped away, accelerating after Defendant West activated the blue lights on his police vehicle. (Defs.' Statement of Undisputed Material Facts ¶¶ 9-10). That act alone was sufficient to constitute fleeing to elude a law enforcement officer under Georgia law, *see* O.C.G.A. §40-6-395(a), and evading arrest by flight is a consideration the Eleventh Circuit has identified as part of the objective reasonableness standard for evaluating an officer's conduct in an excessive force claim. *German*, 399 F. App'x at 556. Additionally, the facts make clear that the Plaintiff was actively resisting arrest by shouting at the officers, making obscene gestures, and refusing to exit his vehicle. (Defs.' Statement of Undisputed Material Facts ¶¶ 13-14, 19-24); *German*, 399 F. App'x at 556. The Court also finds that, viewed objectively, it was at best unclear at the time the first Taser was fired whether the Plaintiff posed an immediate threat to the Defendants' safety, considering that the Plaintiff was shouting obscenities and refusing to exit his vehicle after fleeing from Defendant West. Based on these facts, the Court finds that the Defendant-Officers' use of force in arresting the Plaintiff was not excessive under the circumstances. For these reasons, the Plaintiff cannot meet his burden of showing that the Defendants violated his constitutional right to be free from excessive force, and the Defendants are therefore entitled to qualified immunity on that claim. *See Gates*, 884 F.3d at 1297; *Gaines*, 871

11

F.3d at 1208 (holding that a plaintiff must carry their burden on both prongs to show that qualified immunity is not appropriate).

### b. Failure to Intervene and Failure to Train

Second, as explained above, the evidence viewed in the light most favorable to the Plaintiff fails to establish an excessive force claim. The Plaintiff's failure to intervene claim thus fails as a matter of law because, having failed to establish an excessive use of force, he necessarily cannot show that the Defendants failed to intervene in the use of excessive force. Therefore, the Defendants are entitled to qualified immunity on the Plaintiff's failure to intervene claim as well. *See Gates*, 884 F.3d at 1296.

Third, while the law supporting the Plaintiff's failure to train claim against Defendant-Sheriff Langford as opposed to a municipality is less clear, it seems the Plaintiff was at least required to show that Defendant Langford had a custom of improperly training his officers regarding use of force and the use of Tasers, specifically. *See Brown v. City of Clewiston*, 848 F.2d 1534, 1539 n. 7 (approving the district court's determination that the plaintiff had "failed to establish a custom of improperly training or supervising police personnel."); *see also Connick v. Thompson*, 563 U.S. 51, 61-62 (2011) (noting that, in the context of municipalities, the failure to train must amount to deliberate indifference of the rights of those who the employees come into contact with). But the evidence shows that each of the Defendant-Officers involved had

completed Georgia's required P.O.S.T. training and Defendant Brandon Amos was also Taser-certified. (Defs.' Statement of Undisputed Material Facts ¶¶ 55-56). The Plaintiff has offered no evidence suggesting that those trainings were constitutionally inadequate or that Defendant Langford had a custom or policy of improperly training his officers outside of the state-mandated training they received. Thus, because the Plaintiff has failed to allege facts setting forth a violation of a constitutional right as to his failure to train claim, Defendant Langford is entitled to qualified immunity as to that claim.[2] *See Gates*, 884 F.3d at 1296.

### iii. The Defendants are Entitled to Official Immunity as to the Plaintiffs' State Law Claims

Next, as to the Plaintiff's claims arising under the Georgia Constitution and for intentional infliction of emotional distress, the Defendants are entitled to official immunity under Georgia law. As explained above, the evidence shows that the force employed by the Defendants was reasonable under the circumstances in order to arrest the Plaintiff for the crime of fleeing to elude. But even were it not, mere unreasonable conduct is insufficient to prevent the

---

[2] Even if Defendant Langford was not entitled to qualified immunity, and even if the Plaintiff's federal claims were meritorious, Defendant Langford would not be subject to respondeat superior liability or vicarious liability more generally. *See Hartley*, 193 F.3d at 1269. And the Plaintiff makes no allegations of any prior incidents or other events that would have put Defendant Langford on notice of a need to supplement the state-mandated training or otherwise act to prevent excessive uses of force by his officers. *See id.*

application of official immunity. *See Black*, 811 F.3d at 1266. And here, the Plaintiff has offered nothing more than his own allegations that the Defendant-Officers who arrested him were acting maliciously or with intent to cause him injury and pain, which are insufficient to defeat a motion for summary judgment. *See Anderson*, 477 U.S. at 257 (holding that the after the initial burden shifts, the non-movant must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists).

## IV.   Conclusion

Based on the Court's determination that the Defendants are entitled to summary judgment on all of the Plaintiff's substantive claims, there is no need to address the Plaintiff's claims for punitive damages. For the reasons set forth above, the Plaintiff's Motion to Strike [Doc. 82] is DENIED and the Defendants' Motion for Summary Judgment [Doc. 79] is GRANTED. The Clerk is DIRECTED to enter judgment in favor of the Defendants and to close this case.

SO ORDERED, this ____29th____ day of August, 2022.


THOMAS W. THRASH, JR.
United States District Judge

14